CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
4/29/2020
JULIA C. DUDLEY, CLERK
BY: LOTTIE LUNSFORD
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## Abingdon Division

| | |
|---|---|
| **TERESA SUZANNE SKEEN**, as administrator and personal representative of the estate of **PHILLIP CAMERON GIBSON II**, deceased, <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON COUNTY SHERIFF'S OFFICE**, <br><br> Serve: 20281 Rustic Lane <br> Abingdon, VA 24210 <br><br> **SHERIFF BLAKE ANDIS**, in his official capacity, <br><br> Serve: 20281 Rustic Lane <br> Abingdon, VA 24210 <br><br> **FRED NEWMAN**, in his individual capacity, <br><br> Serve: 34401 Loves Mill Road <br> Glade Spring, VA 24340 <br><br> **SETH SPARKS**, in his individual capacity, <br><br> Serve: 600 Hagy Street SW <br> Abingdon, VA 24210 <br><br> **CHAD LONG**, in his individual capacity, <br><br> Serve: 16 West Jessee Street <br> Lebanon, VA 24266 <br><br> **JOSH ASBURY**, in his individual capacity, <br><br> Serve: 21066 Vances Mill, Road | Civil Action No. 1:20CV00017 <br><br> **JURY TRIAL DEMANDED** |

1

|  |  |
|---|---|
| Abingdon, VA 24211 | ) |
|  | ) |
| And | ) |
|  | ) |
| JOHN DOES #1-10, in their individual capacities, | ) |
|  | ) |
|  | ) |
|  | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Teresa Suzanne Skeen, as the administrator and personal representative of the estate of Phillip Cameron Gibson II, deceased ("Plaintiff"), by counsel, and states as follows for her Complaint against Defendants Washington County Sheriff's Office, Sheriff Blake Andis, Fred Newman, Seth Sparks, Chad Long, Josh Asbury, and John Does #1-10.

## INTRODUCTION

1. This civil rights and state tort action, brought under 42 U.S.C. § 1983 and Virginia Code § 8.01-50, *et seq.*, seeks compensatory and punitive damages from the Defendants for violating the United States Constitution and state law in connection with the fatal, unjustified police shooting of Plaintiff's son, Phillip Cameron Gibson, II, on May 8, 2018 in the town of Glade Spring, Washington County, Virginia.

## JURISDICTION AND VENUE

2. Jurisdiction exists in this case pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1331 and 1343.

3. This Court has pendent and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events underlying this action occurred in and around Washington County, Virginia, which is within

the jurisdiction of the United States District Court for the Western District of Virginia, Abingdon Division.

## PARTIES

5. Teresa Suzanne Skeen ("Plaintiff") is a resident of the Commonwealth of Virginia and the administrator and personal representative of the estate of Phillip Cameron Gibson, II ("Gibson"), as well as Gibson's mother. Plaintiff qualified as administrator of Gibson's estate on April 15, 2020. **See Exhibit A**.

6. Gibson, affectionately called "BoBo" by his family, was, at all relevant times, a resident of the Commonwealth of Virginia. Gibson was a 37-year old man beloved by his family, described as kind and soft-hearted. Gibson did not have any violent criminal history. Sadly, Gibson's life came to an untimely end when, on May 8, 2018, he was fatally and unlawfully shot by deputies with the Washington County Sheriff's Office ("WCSO"), in the town of Glade Spring, Virginia, who were supported by law enforcement officers with the WCSO, Virginia State Police ("VSP"), and Glade Spring Police Department ("GSPD").

7. Pursuant to Virginia Code § 8.01-53, the statutory beneficiaries of Gibson's estate are Plaintiff (mother), Phillip Cameron Gibson, Sr. (father), Shirley Paige Fultz (sister), and Albert Corey Skeen (half-brother). Prior to his untimely death, Gibson had no spouse, children, grandchildren, or parents who regularly received support or regularly received services from Gibson for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care.

8. The WCSO is a local political entity or subdivision created by the Constitution of the Commonwealth of Virginia. The WCSO is directed by the Sheriff, who is elected at-large for

3

a four-year term, and is responsible for, among other things, the enforcement of all laws enacted by state and local governments in Washington County.

9. Defendant Sheriff Blake Andis ("Sheriff") is the current Sheriff of Washington County, having taken office on January 1, 2020. Defendant Sheriff is being sued in his official capacity as Sheriff of Washington County, as a successor to Defendant Fred Newman.

10. Defendant Fred Newman ("Newman") was, at all relevant times, a citizen of the Commonwealth of Virginia and the Sheriff of Washington County, Virginia, having left office on December 31, 2019. As described below, Defendant Newman failed to properly train and supervise the WCSO deputies who fatally and unlawfully shot Gibson, and subsequently sanctioned, tolerated, and ratified such deputies' actions. Defendant Newman is being sued in his individual capacity.

11. Defendant Seth Sparks ("Sparks") was, at all relevant times, a citizen of the Commonwealth of Virginia and a deputy employed by the WCSO. As described below, Defendant Sparks was one of the WCSO deputies who fatally and unlawfully shot Gibson. Defendant Sparks is being sued in his individual capacity.

12. Defendant Chad Long ("Long") was, at all relevant times, a citizen of the Commonwealth of Virginia and a deputy employed by the WCSO. As described below, Defendant Long was one of the WCSO deputies who fatally and unlawfully shot Gibson. Defendant Long is being sued in his individual capacity.

13. Defendant Josh Asbury ("Asbury") was, at all relevant times, a citizen of the Commonwealth of Virginia and a deputy employed by the WCSO. As described below, Defendant Asbury was one of the WCSO deputies who fatally and unlawfully shot Gibson. Defendant Asbury is being sued in his individual capacity.

14. Defendant John Does #1-10 ("Does #1-10") are male WCSO deputies who participated in the fatal shooting of Gibson, as described below, but whose identities and actual numbers are currently unknown to Plaintiff.

## STATEMENT OF FACTS

15. On the evening of May 8, 2018, on West Main Street in Abingdon, Virginia, Sergeant Lance Campbell, then a WCSO deputy, stopped and pulled over a vehicle being driven by Gibson.

16. Gibson spoke with Sergeant Campbell and, for reasons unknown, Sergeant Campbell shattered the window of Gibson's vehicle.

17. Gibson, still in his vehicle, fled the scene, and was pursued by WCSO deputies, officers of the GSPD, and troopers with the VSP, traveling through various side roads as well as Interstate 81. Throughout the pursuit, law enforcement utilized spike traps. The vehicle pursuit ended when a pursuit intervention technique ("PIT") maneuver executed by a VSP trooper caused Gibson's vehicle to crash against a utility pole near the intersection of Route 91 and Route 11, in the town of Glade Spring, Virginia.

18. From there, near the intersection of Route 91 and Route 11, Gibson fled on foot and law enforcement officers pursued him. Gibson ran towards a nearby restaurant, Pizza Plus, and then across Route 11 and up an embankment towards a gas station and convenience store. As Gibson neared the top of the embankment, he tripped and fell. At that point, deputies with the WCSO—Defendants Sparks, Long, Asbury, and Does #1-10 (collectively, the "Shooter Defendants")—opened fire on Gibson using their service firearms, resulting in a total of twelve gunshot wounds to Gibson, three of which entered from the back (one bullet through Gibson's lower right back, two bullets through the back of Gibson's left arm).

19. Neither the Shooter Defendants nor any other law enforcement officer attempted to provide any assistance to Gibson, medical or otherwise, after he was shot by the Shooter Defendants.

20. As a direct and proximate result of the Shooter Defendants shooting Gibson using their service firearms, Gibson died.

21. Following the fatal and unlawful shooting of Gibson by the Shooter Defendants, law enforcement agencies, to include the WCSO and its then-Sheriff, Defendant Newman, falsely accused Gibson of having turned towards the law enforcement officers and pointed a firearm at them as he reached the top of the embankment.

22. In truth, at the time the Shooter Defendants fired their service firearms at Gibson, Gibson was not holding any firearm or any device resembling a firearm. Gibson, moreover, does not have any violent criminal history.

23. Following the fatal and unlawful shooting of Gibson by the Shooter Defendants, then-Sheriff Defendant Newman falsely accused Gibson of having a criminal conviction for aggravated assault, in an apparent attempt to paint a picture of Gibson as a violent felon.

24. In truth, Gibson has never been convicted of aggravated assault. Gibson, moreover, does not have any violent criminal history.

25. Following the fatal and unlawful shooting of Gibson by the Shooter Defendants, the WCSO conducted a cursory investigation of the Shooter Defendants' actions, found the shooting to be justified, and thus failed to reprimand the Shooter Defendants.

26. In truth, the Shooter Defendants violated Gibson's rights, remedies, privileges, and immunities guaranteed to him under the United States Constitution to be free from unreasonable seizure and excessive force and wrongfully caused Gibson's death.

27. Following the fatal and unlawful shooting of Gibson by the Shooter Defendants, Gibson's family sought answers from the law enforcement agencies involved with his death.

28. On October 29, 2018, Carolyn Michelle Castle ("Castle"), Gibson's relative, submitted a request under the Virginia of Freedom Information Act to the WCSO for all records and videos, including dash camera and body camera footage of the initial traffic stop and officer involved shooting of Gibson.

29. On November 1, 2018, Sheriff Newman denied the request, invoking his purported discretion to not release such records and instead released a "preliminary investigative report," the summary of which was fully redacted. Sheriff Newman then directed Michelle Castle to the VSP.

30. On November 27, 2018, Plaintiff submitted a request under the Virginia of Freedom Information Act to the VSP that was virtually identical to the request submitted and denied to the WCSO.

31. On November 29, 2018, the VSP denied the request as well, providing only mandatory criminal incident information pursuant to Virginia Code § 2.2-3706.

32. On May 9, 2019, Castle and Shirley Paige Fultz ("Fultz") requested, by counsel, that the WCSO allow them to review the records, including video footage, in its custody.

33. On May 16, 2019, Sheriff Newman denied this request and again claimed that the officer-involved shooting of Gibson was referred to the VSP for investigation, and that all specific details and videos would need to be released by concurrence of the VSP.

34. On July 16, 2019, counsel for Castle and Fultz made a request to the VSP under the Virginia Freedom of Information Act for records related to the vehicle stop, chase, and subsequent shooting of Gibson.

7

35. By letter dated July 24, 2019, VSP indicated that many of the items requested—including videos—were property of the WCSO and would need to be requested from the WCSO.

36. Upon information and belief, the WCSO (and its then-Sheriff, Defendant Newman) and the VSP deliberately engaged in a cover-up of the fatal and unlawful shooting of Gibson by, *inter alia*, withholding records related to the fatal and unlawful shooting of Gibson with adequate justification.

37. The acts of all the Defendants as set forth above were wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

### COUNT I – DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983 – USE OF EXCESSIVE FORCE/UNREASONABLE SEIZURE
### (Against the Shooter Defendants)

38. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

39. The Shooter Defendants intentionally and maliciously shot Gibson, without provocation, reason, or justification, resulting in Gibson's death.

40. At all relevant times, the Shooter Defendants were acting under the color and authority of state law.

41. Through their use of excessive and, ultimately, deadly force, the Shooter Defendants effectuated an unreasonable seizure of Gibson in violation of the Fourth and Fourteenth Amendments of the United States Constitution, thereby depriving Gibson of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983.

42. The Shooter Defendants acted intentionally, carelessly, recklessly, willfully and wantonly, and with malice and/or deliberate indifference to the safety, well-being, and federally

protected rights of Gibson, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

43. As a direct and proximate result of the Shooter Defendants' actions, Gibson was wrongfully, unreasonably, and unlawfully killed under the color and authority of state law.

### COUNT II – DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983 – FAILURE TO TRAIN/SUPERVISE
### (Against Defendant Newman)

44. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

45. As described above, the Shooter Defendants intentionally and maliciously shot Gibson, without provocation, reason, or justification, resulting in Gibson's death, thereby depriving Gibson of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983.

46. At all relevant times, Defendant Newman was responsible for providing training regarding the use of appropriate force in the arrest of individuals, and was responsible for supervising WCSO deputies to assure that the deputies employed by the WCSO did not use excessive and unreasonable force in the arrest of individuals.

47. At all relevant times, Defendant Newman was responsible for the training, supervision, and conduct of the deputies employed by the WCSO, to include the Shooter Defendants.

48. Upon information and belief, at all relevant times, Defendant Newman, as Sheriff of Washington County, maintained a practice or custom of deputies employing excessive, deadly force without sufficient provocation, reason, or justification.

49. One incident illustrating the WCSO's practice or custom of deputies employing excessive, deadly force without sufficient provocation, reason, or justification occurred on June 27, 2014. On that date, a WCSO deputy shot and killed a man who, while inside his own home, was holding a gun but did not point his gun at anyone or make any verbal threats.

50. Another incident illustrating the WCSO's practice or custom of deputies employing excessive, deadly force without sufficient provocation, reason, or justification occurred on July 8, 2014. On that date, WCSO deputies shot and killed a man after going to his residence to check on his welfare at the request of a family member. The WCSO would later claim that the man had taken his family hostage; however, the family refuted this claim.

51. Defendant Newman acted in a deliberately indifferent manner in failing to properly train and supervise his deputies, the Shooter Defendants, who fatally and unlawfully shot Gibson on May 8, 2020, as described above.

52. Defendant Newman subsequently sanctioned, tolerated, and ratified the Shooter Defendants' unconstitutional use of excessive force by:

   a. falsely accusing Gibson of having brandished a firearm against law enforcement officers, in an apparent attempt to justify the Shooter Defendants unlawful conduct;

   b. falsely accusing Gibson of having been convicted of aggravated assault, in an apparent attempt to support the false claim that Gibson (who has never been convicted of a violent felony) would have brandished a firearm against law enforcement officers;

   c. approving the Shooter Defendants' violation of Gibson's constitutional rights; and

   d. failing to discipline or reprimand the Shooter Defendants.

53. As a direct and proximate result of Defendant Newman's failure to train, failure to supervise, and subsequent sanctioning, tolerating, and ratifying of the Shooter Defendants' unlawful conduct, Gibson was fatally and unlawfully shot, thereby depriving Gibson of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983.

## COUNT III – DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983 – POLICY OR CUSTOM
### (Against Defendant Newman)

54. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

55. At all relevant times, Defendant Newman, as Sheriff, had final policy-making authority for the WCSO.

56. Upon information and belief, Defendant Newman, as Sheriff of the WCSO, maintained a practice or custom of deputies employing excessive, deadly force without sufficient provocation, reason, or justification, as illustrated in paragraphs 49–50 above.

57. As Sheriff of the WCSO, Defendant Newman, ratified the Shooter Defendants' unconstitutional use of excessive force by:

   a. falsely accusing Gibson of having brandished a firearm against law enforcement officers, in an apparent attempt to justify the Shooter Defendants unlawful conduct;

   b. falsely accusing Gibson of having been convicted of aggravated assault, in an apparent attempt to support the false claim that Gibson (who has never been convicted of a violent felony) would have brandished a firearm against law enforcement officers;

   c. approving the Shooter Defendants' violation of Gibson's constitutional rights; and

11

   d. failing to discipline or reprimand the Shooter Defendants.

58. As a direct and proximate result of Defendant Newman's, as Sheriff of the WCSO, maintaining a practice or custom of employing excessive, deadly force without sufficient provocation, reason, or justification, and sanctioning, tolerating, and ratifying the Shooter Defendants' unlawful killing of Gibson, Gibson was deprived of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States under the United States Constitution, in violation of rights enforceable under 42 U.S.C. § 1983.

### COUNT IV– WRONGFUL DEATH (VIRGINIA CODE § 8.01-50 *ET SEQ.*)
### (Against Defendant WCSO, Defendant Sheriff, Defendant Newman, and the Shooter Defendants)

59. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

60. On May 8, 2020, Gibson was shot to death as a result of the intentional, reckless, careless, willful and wanton, grossly negligent, and/or negligent conduct of the Shooter Defendants. The Shooter Defendants' actions were done willfully, wantonly, and with such recklessness as evinced a conscious disregard for the safety of others.

61. At all relevant times, the Shooter Defendants were acting in the course and scope of their employment as deputies with the WCSO, and their tortious conduct was therefore imputable to Defendant WCSO and Defendant Sheriff, in his official capacity.

62. The WCSO, under the administration of former Sheriff Defendant Newman, maintained a practice or custom of employing excessive, deadly force without sufficient provocation, reason, or justification, and sanctioned, tolerated, and ratified the Shooter Defendants' unlawful killing of Gibson. Defendant WCSO and Defendant Sheriff, in his official capacity, are liable as successors for the tortious conduct of the WCSO's predecessor Sheriff,

Defendant Newman. Therefore, such tortious conduct is imputable to Defendant WCSO and Defendant Sheriff, in his official capacity.

63. Pursuant to Virginia Code § 8.01-53, the statutory beneficiaries of Gibson's estate are Plaintiff (mother), Phillip Cameron Gibson, Sr. (father), Shirley Paige Fultz (sister), and Albert Corey Skeen (brother). As a direct and proximate result of Gibson's death, all such statutory beneficiaries have suffered severe and substantial damages, including but not limited to grief, sorrow, mental anguish, and solace, including loss of society and companionship.

WHEREFORE, plaintiff requests damages as follows:

A. For Count I, against each defendant named, jointly and severally, compensatory damages in the amount of five million dollars ($5,000,000.00) and punitive damages in the amount of five million dollars ($5,000,000.00);

B. For Count II, against Defendant Newman, compensatory damages in the amount of five million dollars ($5,000,000.00) and punitive damages in the amount of five million dollars ($5,000,000.00);

C. For Count III, against Defendant Newman, compensatory damages in the amount of five million dollars ($5,000,000.00) and punitive damages in the amount of five million dollars ($5,000,000.00);

D. For Count IV, against each defendant named, jointly and severally, compensatory damages in the amount of five million dollars ($5,000,000.00) and punitive damages in the amount of five million dollars ($5,000,000.00);

E. For attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

F. For such further relief this Court deems just and proper.

**TRIAL BY JURY DEMANDED.**

Respectfully submitted,

TERESA SUZANNE SKEEN, as administrator and personal representative of the estate of PHILLIP CAMERON GIBSON II, deceased

By:   /s/John P. Fishwick, Jr.
         Of Counsel

John P. Fishwick, Jr. (VSB #23285)
John.Fishwick@fishwickandassociates.com
Carrol M. Ching (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin (VSB #92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile