## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **TERESA SUZANNE SKEEN, AS ADMINISTRATOR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF PHILLIP CAMERON GIBSON II, DECEASED,** | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20CV00017 |
| v. | ) ) | **OPINION AND ORDER** |
| **WASHINGTON COUNTY SHERIFF'S OFFICE, ET AL.,** | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) | |

*John P. Fishwick, Jr., Carrol M. Ching, Daniel J. Martin, Fishwick & Associates PLC, Roanoke, Virginia, for Plaintiff; Jim H. Guynn, Jr., Guynn, Waddell, Carroll, & Lockaby, P.C., Salem, Virginia, for Defendants.*

This civil case, asserting federal and state causes of action, arises out of the shooting death of a fleeing suspect by sheriff's deputies, in which the decedent's representative sues the deputies, the sheriff at the time of the shooting, the present sheriff, and the "sheriff's office." On motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), I find that dismissal is appropriate as to the present sheriff and the sheriff's office. I will also dismiss the sheriff at the time of the shooting but grant leave to amend as to the claims against that defendant.

## I.

The plaintiff, the administrator and personal representative of the estate of Phillip Cameron Gibson II, the deceased, sues the Washington County (Virginia) Sheriff's Office (WCSO), the current Washington County Sheriff Blake Andis in his official capacity, the former Washington County Sheriff Fred Newman in his individual capacity, three named deputy sheriffs involved in the incident in their individual capacities, and unnamed deputy sheriffs in their individual capacities. Sheriff Andis, WCSO, and former Sheriff Newman have moved to dismiss.

The Complaint alleges the following facts, which I must accept as true for the purpose of deciding the motions to dismiss. On May 8, 2018, a Washington County deputy sheriff conducted a traffic stop of Gibson. For "reasons unknown," Compl. ¶ 16, ECF No. 1, the deputy shattered the window of Gibson's vehicle. Gibson then fled the scene in his vehicle. A vehicle pursuit followed, involving other Washington County deputies, state police troopers, and officers from a local police department. The road pursuit ended when Gibson's vehicle crashed. From there, Gibson fled on foot. During the foot pursuit, the deputies opened fire on Gibson, resulting in twelve gunshot wounds. None of the law enforcement officers present attempted to help Gibson after he was shot. Gibson died thereafter.

Following the shooting, the sheriff at the time, Fred Newman, and the deputies involved in the shooting, accused Gibson of having turned toward law enforcement

officers and pointing a firearm.  Gibson was also accused of having a criminal

conviction for aggravated assault.  However, Gibson allegedly was neither holding

a firearm nor did he have a violent criminal history.  An internal investigation found

the shooting to be justified and the deputies were not reprimanded.  Gibson's family,

seeking answers, requested all records and video footage regarding the shooting,

which Newman denied with the exception of a preliminary investigative report.

The Complaint contains four counts.  Only three of the counts are relevant to

the present motions to dismiss.  All three of these counts are against former Sheriff

Newman.  The plaintiff alleges that Newman acted in a deliberately indifferent

manner in failing to properly train and supervise the deputies who shot Gibson, and

that he subsequently ratified this use of force.  The plaintiff further contends that

Newman maintained a practice or custom of his deputies using deadly force without

sufficient justification.  Based on these allegations, the plaintiff asserts in two counts

that Newman is liable pursuant to 42 U.S.C. § 1983 and in one count under

Virginia's Wrongful Death Act, Va. Code Ann. §§ 8.01-50–56.

Current Sheriff Andis took office on January 1, 2020, after the events in this

case.  In the state law wrongful death count, the plaintiff claims liability against the

WCSO and Sheriff Andis in his official capacity.  The plaintiff contends that because

the deputies' acts occurred during the course of the deputies' employment, such acts

are imputable to Sheriff Andis, their current employer, as well as the WCSO.  The

plaintiff also contends Sheriff Andis and the WCSO are liable as successors for defendant Newman's alleged tortious conduct.

The motions to dismiss have been briefed and are ripe for decision.

## II.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief[,]" not just a "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "In considering a motion to dismiss under Rule 12(b)(6), a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." *McCaffrey v. Chapman*, 921 F.3d 159, 163–64 (4th Cir. 2019) (internal quotation marks and citation omitted).  A complaint does not need detailed factual allegations to survive a motion to dismiss; however, plaintiffs must do more than just include labels and conclusions or a recitation of the elements of the cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The claim to relief must be plausible on its face, meaning the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A.

I will first address the wrongful death claim against current Sheriff Andis and the WSCO.  For the following reasons, the Motion to Dismiss as to these defendants will be granted.

The doctrine of sovereign immunity is a threshold issue.  The Eleventh Amendment bars suits for money damages against a state unless Congress has expressly abrogated that immunity, or the state has consented to suit.  U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996).  Official capacity suits are only another way of suing the entity itself.  *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000).  In Virginia, suits against a sheriff acting in his official capacity for money damages is a suit against the Commonwealth, entitling the sheriff to immunity.  *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013).  However, Virginia officials cannot enjoy immunity from tort liability if there are plausible intentional tort or gross negligence claims asserted against them.  *See, e.g.*, *Hedrick v. Roberts*, 183 F. Supp. 2d 814, 824 (E.D. Va. 2001) ("[D]efendant, as Sheriff of the City of Hampton, is a constitutional officer.  As such, he is protected by the doctrine of sovereign immunity.  However, this protection is not absolute, for if defendant acted wantonly, or in a culpable or grossly negligent manner, he would lose this protection.") (internal quotation marks omitted); *Alfaro-Garcia v. Henrico Cnty.*, No. 3:15cv349, 2016 WL 5388946, at *15 (E.D. Va. Sept. 26, 2016) ("Sheriff

Wade is undoubtedly a constitutional officer.  The Complaint, however, does not allege a claim for simple negligence, but false imprisonment — an *intentional* tort. As such, sovereign immunity does not protect Sheriff Wade to the extent he acted intentionally.") (citing *Tomlin v. McKenzie*, 468 S.E.2d 882, 884 (Va. 1996)).  Thus, the question is whether the plaintiff has stated a plausible claim of intentional and/or grossly negligent conduct under Virginia's Wrongful Death Act that is attributable to Sheriff Andis in his official capacity.  I find that she has not.

Here, the plaintiff has not alleged that Sheriff Andis has directly committed an intentional tort or has acted in a grossly negligent manner, but instead contends that the alleged intentional and/or grossly negligent acts of the defendant deputies and former sheriff should be imputed to him as successor.  Courts within this circuit have held new sheriffs liable for acts committed in under prior sheriffs.  *See generally, e.g.*, *King v. McMillan*, 594 F.3d 301 (4th Cir. 2010) (involving a Title VII claim); *Jolliffe v. Mitchell*, 971 F. Supp. 1039 (W.D. Va. 1997) (involving a claim brought under the Family and Medical Leave Act).  However, the cases involving successor liability and newly elected sheriffs involve only federal law, distinguishing this action from those cases.  *Oakes v. Patterson*, No. 7:13–cv–552, 2014 WL 1569427, at *3 (W.D. Va. Apr. 17, 2014).  Here, Andis did not supervise or employ the deputies (or the former sheriff) when they allegedly committed their

tortious acts.  As such, there is "no basis for a gross negligence claim related to overseeing the sheriff's department and sheriff's deputies during that time." *Id.*

Like sheriffs, it has been determined that Virginia sheriffs' offices are considered suits against the Commonwealth.  *Bell v. City of Roanoke Sheriff's Off.*, No. 7:09-CV-00214, 2009 WL 5083459, at *2 (W.D. Va. Dec. 23, 2009) ("It is well settled that, in Virginia, suits against a Sheriff or her deputies in their official capacities, *as well as suits against the Sheriff's Office*, are considered suits against the state.") (emphasis added); *Blankenship v. Warren Cnty.*, 931 F. Supp. 447, 449 (W.D. Va. 1996) ("[T]he Sheriff and the Sheriff's Department are arms of the state.").

In any event, WSCO is not an entity subject to suit.  When a party is neither an individual nor a corporation, the capacity to sue or be sued is determined by state law.  Fed. R. Civ. P. 17(b)(3).  "'In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued.'"  *Graves v. Austin*, No. 4:12–cv–21, 2012 WL 6019099, at *3 (W.D. Va. Dec. 3, 2012) (quoting *Muniz v. Fairfax Cnty. Police Dep't*, No. 1:05CV446 (JCC), 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005)).  The Code of Virginia does not provide that a sheriff's office is a separate legal entity that can be sued.  *Trantham v. Henry Cnty. Sheriff's Off.*, No. 4:10CV00058, 2011 WL 863498, at *5 (W.D. Va. Mar. 10, 2011) ("Local police and sheriff's departments in Virginia

are 'non suis juris,' meaning they simply do not have the capacity to be sued."), *aff'd*, 435 F. App'x 230 (4th Cir. 2011) (unpublished).  Accordingly, defendant WCSO must be dismissed.

B.

I now turn to former Sheriff Newman's Motion to Dismiss.  The plaintiff alleges that Newman, as sheriff at the time of the shooting, failed to train the deputies involved and maintained a practice or custom of excessive force, in violation of the Fourth and Fourteenth Amendments, as enforced under 18 U.S.C. § 1983 and the Virginia Wrongful Death Act.  However, I find that the plaintiff has failed to allege sufficient plausible facts showing she is entitled to relief.

"Section 1983 of Title 42 of the United States Code provides a civil remedy for state deprivations of rights secured by the Constitution and laws of the United States." *Semple ex rel. Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999).  Supervisory officials may be held responsible under § 1983. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001).  However, such liability is not based on respondeat superior.  *Id.*  Instead, it is based "upon a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw ex rel. Bowen v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (internal quotation marks and citation omitted).  The elements a plaintiff must plausibly allege to

proceed on a theory of supervisory liability are: (1) actual or constructive knowledge that the subordinate's conduct posed a risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge rises to the level of "deliberate indifference"; and (3) the existence of a causal link between the alleged inaction and the injury. *Id.* at 799. In essence, "the term 'supervisory liability' is a misnomer" because government officials can only be held liable under § 1983 for their own misconduct, not the misconduct of their subordinates. *Iqbal*, 556 U.S. at 677.

Sheriffs may also be held liable pursuant to § 1983 under the theory of municipal liability for instituting a policy or custom that causes a constitutional violation. *See Jenkins ex rel. Jenkins v. Woody*, No. 3:15cv355, 2017 WL 342062, at *11 (E.D. Va. Jan. 21, 2017). To survive a motion to dismiss based upon policy or custom, a plaintiff must plausibly allege that the unconstitutional acts implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Such claims can arise (1) through an express policy; (2) through the decisions of final policymakers; (3) "through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens"; or (4) through persistent and widespread practices equating to the force of law. *Lytle v. Doyle*, 326 F.3d 463, 470 (4th Cir. 2003) (internal quotation marks,

citations, and alteration omitted).  Notably, "[w]hile a municipal liability claim based upon a particular official's attributed conduct and a supervisory liability claim against that official based upon the same conduct are not perfectly congruent, each requires proof both of the official's deliberate indifference and of a close affirmative link between his conduct and a resulting constitutional violation by a subordinate." *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (citation omitted).  Deliberate indifference is a high standard to meet.  *Grayson ex rel. Collins v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  A plaintiff may establish a sheriff's deliberate indifference through "continued inaction in the face of documented widespread abuses." *Shaw*, 13 F.3d at 799 (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Although not clear from the face of the Complaint, the plaintiff appears to invoke both the theories of supervisory liability and municipal liability in her § 1983 claims.  Her claims are based on the following allegations: (1) the deputies involved intentionally shot the decedent without sufficient justification, depriving the decedent of his constitutional rights to be free from unreasonable seizure and excessive force; (2) Newman, as the individual with final policy-making authority for the WCSO, was responsible for the training, supervision, and conduct of his deputies to prevent the use of excessive force, including the particular deputies involved in the shooting; (3) Newman maintained a practice or custom of deputies using excessive force without justification; (4) two other shootings involving WCSO

deputies illustrate this practice or custom; and (5) Newman ratified the underlying conduct pertinent to these claims by making false accusations about the defendant's brandishing of a firearm during the chase as well as his criminal history, by approving of the deputies' violations, and by failing to discipline the deputies. The plaintiff contends that these acts directly and proximately resulted in the deprivation of the decedent's constitutional rights.

I find that these allegations fail to establish plausible § 1983 claims against Newman. First, I find that the defendant's failure to train and supervise claim is devoid of anything more than "'a formulaic recitation of the elements of a cause of action'" or "naked assertion[s]" that Newman caused the decedent's alleged constitutional violations. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The Supreme Court has recognized that the "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A failure to train claim requires plausible allegations of "deliberate indifference[,]" showing that such failure could have been the "moving force behind the [alleged] constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989) (alteration and citations omitted). Supervisory liability also requires a plausible showing of knowledge, deliberate indifference, and causation. *Shaw*, 13 F.3d at 798. Thus, liability attaches only when the "identified

deficiency" is "closely related to the ultimate injury" and "where a failure . . . reflects a 'deliberate' or 'conscious' choice." *City of Canton*, 489 U.S. at 389, 391.

The plaintiff has failed to plead facts identifying a deficiency in Newman's training or supervision beyond stating in a conclusory fashion that the training and supervision was inadequate. Allegations of generalized deficiencies in training are not sufficient. *See Jackson v. Brickey*, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011). Failure to train claims require a plaintiff to plead and prove specific deficiencies, and "general laxness or ineffectiveness in training" is not enough. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). Plaintiffs must also plausibly allege that the inadequate training made the occurrence of the specific violation "almost bound to happen[,]" not just "likely to happen." *Id.* (internal quotation marks omitted). The plaintiff points to two other shootings involving WCSO officers, but she fails to allege a plausible link between these incidences, any deficient training, and the decedent's injury. For example, the plaintiff refers to a June 27, 2014, shooting by a deputy of Sheriff Newman. However, the plaintiff's inclusion of that incident does not support her claim. It was actually litigated in this court. *Huffman ex rel. Huffman v. Newman*, No. 1:15CV00033, 2016 WL 2901750 (W.D. Va. May 18, 2016). The uncontested facts in that case shows the deputy sheriff (not a defendant here) responded to a 911 call from Mrs. Huffman that her husband had been drinking, making suicidal statements, had taken a pistol from a gun cabinet and

had locked himself in the bathroom, where he apparently had shot at a stray cat from the bathroom window.  2016 WL 2901750, at *1.  When the deputy arrived, accompanied by a state trooper, Mr. Huffman was seated  in the living room, his back to the front door, with the pistol at his side.  The deputy ordered Mr. Huffman twice to give up his pistol, but he refused.  Mr. Huffman then rose from his seated position with his pistol in his hand. The deputy ordered Huffman to drop the gun, Huffman did not do so, but began moving toward his left. The deputy fired one shot, secured Huffman's firearm, and began applying first aid.  Huffman was transported to the hospital by ambulance and helicopter, where he died.  The plaintiff fails to allege any similarities between any possible wrongdoing in the June 2014 shooting and the underlying conduct in this matter.  The Complaint thus fails to plausibly allege that this incident and any subsequent alleged training deficiencies are "closely related to the ultimate injury" here.  *City of Canton*, 489 U.S. at 391.

The plaintiff's only other specific example refers to another 2014 shooting involving Sheriff Newman's deputies.   Again, however, the plaintiff fails to plausibly allege how the underlying facts and alleged constitutional injury in this second 2014 shooting are related to any identified training deficiency and how that training deficiency is related to the injury in the present case.[1]  While it may be

---

[1]   It is alleged only that "WCSO deputies shot and killed a man after going to his residence to check on his welfare at the request of a family member."  Compl. ¶ 50,  ECF No. 1.

determined that the shooting described in this case was unjustified, there is no alleged link to any specific failure to train.  Moreover, these two incidences do not indicate "[a] pattern of similar constitutional violations" showing deliberate indifference or a conscious choice regarding training.  *Connick*, 563 U.S. at 62. Although the plaintiff need not include detailed factual allegations in her Complaint, she must still plausibly allege the existence of a training deficiency and a causal link between that deficiency and the underlying injury.  *See Hernandez ex rel. AE v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying the *Iqbal* plausibility standard to a § 1983 complaint).[2]  I find she has not sufficiently done so.

Secondly, the plaintiff's reliance on the two 2014 incidences to show a general custom or practice of WCSO deputies using deadly force without justification, beyond the failure to train allegation, fails for similar reasons.  A custom may be found to exist when there are persistent and widespread practices having the force of law.  *Spell*, 824 F.2d at 1386 (citing *Monell*, 436 U.S. at 691).  Again, the plaintiff here relies on the two specific incidences in an attempt to illustrate a plausible

---

[2]    The plaintiff cites to *Harvey ex rel. Dent v. Roanoke City Sheriff's Off.*, No. 7:06CV00603, 2007 WL 602091 (W.D. Va. Feb. 23, 2007), in her brief in support of the proposition that her allegations are sufficient to survive the motion to dismiss stage. Pl.'s Mem. in Opp'n 11–12, ECF No. 23.  However, the *Harvey* motions to dismiss were decided before the Supreme Court's *Twombly* and *Iqbal* decisions requiring pleadings to include plausible claims.  The *Harvey* court specifically referred to the now-outdated notice pleading standard.  2007 WL 602091, at *5 ("Given the liberal requirements of notice pleading, the plaintiff's allegations clearly state a claim for relief against Sheriff Johnson.").  Thus, I do not find *Harvey* to be persuasive.

practice or custom of WCSO deputies using excessive force.   However, the plaintiff's reliance on these two events fails to indicate a plausible claim for relief because neither the first incident nor the second are alleged to be similar to the shooting relevant to this case.   The plaintiff cites to no other shootings, either in specific or general terms, indicating a practice or custom.  *See Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403–04 (4th Cir. 2014) (finding that the plaintiff had stated a plausible claim for relief by citing generally to numerous other cases and granted motions showing the police department condoned or turned a blind eye to similar violations).  Reliance on these two incidences alone does not indicate a "persistent and widespread practice" indicating deliberate indifference to the rights of Washington County residents.  *Id.*

The plaintiff's § 1983 claims also hinge on the allegation that Newman ratified the deputies' conduct.  Courts have found that ratification can serve as a basis for § 1983 municipal liability.  *See, e.g.*, *Davison v. Loudoun Cnty. Bd. of Supervisors*, No. 1:16cv932 (JCC/IDD), 2016 WL 4801617, at *6 (E.D. Va. Sept. 14, 2016) ("A municipal body such as the Board may be responsible for the actions of a subordinate if it ratifies them.").  Moreover, such ratification, although representing only a single violation, may be sufficient to impose liability.  *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 195–96 (4th Cir. 1994).  Ratification occurs and municipal liability may be imposed when "authorized policymakers approve a subordinate's decision and

the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion).  In Virginia, the sheriff is an authorized policymaker.  *Justus ex rel. Justus v. Cnty. of Buchanan*, 498 F. Supp. 2d 883, 886 (W.D. Va. 2007).   However, as, policymaker, the sheriff's ratification must still have plausibly caused the alleged constitutional violation to avoid improperly relying on the theory of respondeat superior.  *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (discussing the "'rigorous standards of culpability and causation'" for municipality liability) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).  For example, in *Hall v. Marion Sch. Dist. No. 2*, the Fourth Circuit found that a school district could be held liable for terminating a teacher's employment in violation of the First Amendment.  31 F.3d at 196.  In that case, the final policymaker, the school board, had the ability to review and approve the decision to fire the teacher, so its failure to intervene to stop the teacher's firing, despite knowing the termination was based on improper reasons, caused the violation itself.  *Id.*

Even accepting the plaintiff's facts regarding Newman's ratification as true — the alleged false accusations about the decedent brandishing a firearm, the decedent's criminal history, as well as the failure to discipline the deputies — the plaintiff has not plausibly stated a claim for relief because those facts, as alleged, could not have caused the underlying conduct and alleged violations to occur.  Any such ratification, entirely subsequent to the alleged violation, does not plausibly

illustrate a policy that was the "'moving force' behind the ultimate violation." *Jones*, 104 F.3d at 627 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).  Thus, the plaintiff's ratification theory, as alleged, must fail.

Finally, the plaintiff alleges Newman should be held liable for the decedent's death under Virginia's Wrongful Death Act.  The plaintiff's bases this claim against Newman on the alleged practice or custom and his subsequent ratification.  Compl. ¶ 62, ECF No. 1.  However, as explained above, the plaintiff has failed to sufficiently allege either a plausible custom or practice or a causative link between Newman's conduct and the deputies' underlying conduct.  Thus, as pleaded, the plaintiff has not stated a claim for which relief can be granted.

## III.

For the reasons set forth above, it is **ORDERED** as follows:

1. The Motion to Dismiss of Defendants Washington County Sheriff's Office and Sheriff Blake Andis, ECF No. 18, is GRANTED;

2. Sheriff Blake Andis and the Washington County Sheriff's Office are DISMISSED as parties; and

3. The Motion to Dismiss of Defendant Fred Newman, ECF No. 16, is GRANTED with leave granted to the plaintiff to amend her Complaint as to her claims against said defendant within 21 days from the entry of this Opinion and Order.

ENTER:  November 12, 2020

/s/  JAMES P. JONES
United States District Judge